Good morning, Your Honors. Your Honor, I'm Sharon Blackford and I represent Gurmit Jassal. I'd like to reserve four minutes for rebuttal, please. I'd like to focus mainly on Mr. Jassal's motion for new trial and why this Court should remand for an evidentiary hearing on that new trial motion, if I may. I'd like to rest on my briefing for the other issues unless the Court has questions about them, in which case, of course, I will answer them. Most of the arguments and questions before the Court today would have been resolved if the District Court had held an evidentiary hearing on Mr. Jassal's motion for a new trial. The central issues of that motion revolve around whether Mr. Jassal and his counsel exercised due diligence in bringing the issue before the Court as soon as they could. There were other issues, but that was really what seemed to be the main problem for the Court. This is an inquiry that required more information than was in the record at the time. Mr. Jassal's motion for a new trial was intended to alert the trial court to the problem, the District Court, not to provide every single fact and evidence that could have been brought forth. What is it, regardless of that, what is it in the new psychological report that would have affected the result in any way? The other thorny question, yes, Your Honor. It went to his Sixth Amendment right to present a defense because the problem was. Look, okay, that's all super. It's up in the air somewhere. I'm asking, is it purely practical matter? What is it in the new psychological report that had any shot at changing the result? It was the degree of his impairment and that it rendered him unable to present his defense. And it would have informed his trial counsel. Well, that just doesn't mean anything to me. I'm sorry. I'm looking for something specific and concrete. I understood the defense position to be that the report would have shown that Jassal was more credible in being, in offering a crazy defense. I mean, that's what I understood the position to be. And I have great difficulty seeing how that had any chance at all of producing a different result. The problem, yes, I understand that, Your Honor. The problem with that is that the government successfully painted Mr. Jassal's jumbled nature of his testimony as purely deceptive, as stemming from a desire to deceive rather than from any genuine confusion or inability to express himself or track in his testimony whatsoever. That was the harm. That was what would have been changed. Well, he continued to tell the same story to the psychologist who interviewed him after the trial and before the new trial motion. So what would have changed? What would have changed? I'm sorry, Your Honor, what would have changed regarding the specific story? Yes. The way in which he told that story and the tangential, bizarre facts that he brought to that story detracted so severely from his credibility that at the closing rebuttal his own counsel was reduced to telling the jury that there's no legal requirement that Mr. Jassal's story makes sense, so don't hold him to that. I believe that if he had been able to tell his story without the crazy intrusions that his paranoid and schizotypal tendencies caused him to interject into it, that it would have been legal. But how would that have been affected at all? If he were crazy, he still was crazy. He was unmedicated crazy, Your Honor. And I don't mean to be disrespectful to my client by calling him crazy. Well, I don't either. I just am having a hard time seeing what would have been different after the report and before it. Well, at the very least, if he had been medicated, he could have provided a coherent explanation for why he believed he was under duress. As it was, he really didn't do so at all. He gave us a narrative. You're not arguing that the disclosures in the report would have made a difference, but rather that after the report somebody would have given him different medications. I'm arguing both. I'm arguing both. I didn't understand that. Yes, I understand. I'm sorry, Your Honor. Yes, I'm arguing both. Is that a new argument or is that an argument that has been made? That's in my briefing, Your Honor. All right. Yes, it is in my opening brief. Both that he would have presented his defense in a coherent, intelligible way, and that he would have been able, if he had not been able to present his defense in a more coherent, intelligible way, then expert testimony of his disorder would have alerted the jury to the fact that there was another cause for his jumbled, incoherent narrative other than purely deceptiveness, which was what the government. It was not found that he was incompetent. No, it was not, Your Honor. No doctor ever said he was incompetent. No, no, you're correct, Your Honor. But what Dr. Muscatel did say was that he had extremely limited information before him, that he had concerns about his competence at trial, and that he could not say whether or not he was competent. He did, as I'm sure opposing counsel will point out, say he appeared to be competent for sentencing. But Mr. Gisalle's mental state was apparently bouncing all around, and we don't know what state he was in. We know that Mr. Misono's first attorney had a complete breakdown of relations and said that Mr. Gisalle was completely unable to assist him in any way after nine meetings. However, what is the standard of review on this motion for a new trial? It is an abuse of discretion, Your Honor. So we've got an abuse of discretion, and we've got a doctor who comes in and says, I can't say he wasn't competent to stand trial. In fact, I think he was. That's the way I read the report. And that he was certainly competent to endure a sentencing, and that there were agitation, paranoia, and tangential thinking that were present before the trial and throughout the trial. But then, on the other hand, I have right there, reading the transcript, that there were no witnesses that say that his conduct was hidden. There stood nothing to say they didn't know about this apparent agitation or paranoia. Stood up in the trial and asked the court to sentence him to death because the judge was a blind person who couldn't read. And I'm to suggest that, based on all of that, it was never known before, it could not have been known before, it could not have been thought about before, and the poor judge on an abuse of discretion made a dang abusive decision not to grant a new trial. Well, Your Honor, you've outlined perfectly my ineffective assistance portion of my argument, and I would like to reserve the rest of my time for rebuttal and address that, if I may. Thank you. May it please the Court. My name is Roger Rogoff. I represent the United States. I was going to start out this argument by going through the test, the legal test, and sort of go through an argument, but I think I'll jump right in and tell you this. This is a case where the system works, where a defendant provided a story about what happened, and that story wasn't true. And under the crucible of cross-examination, a minimally competent cross-examination, it was found to be ridiculous. It wasn't because the defendant had mental illness that his story sounded crazy. It wasn't because there was schizotypal thought patterns. It was because his story was a canard, and when he was asked questions about it, he had to change his story. And when he changed his story and zigzagged back and forth through a cross-examination, it made no sense anymore. That is one of the three things that happens when you are cross-examined about a story you tell when that story is not true. Your Honor, this is a case about the system working, about a defendant who presented one defense at trial, a defense of duress. It failed, and now he wants to try and present a second defense because he got a psychologist to say that there are some issues with his mental health. That is not the way the system is supposed to work. There was overwhelming evidence presented at trial that the defendant smuggled 47 kilograms of MDMA and 10 kilograms of marijuana into the United States and intended to distribute it. Because there was overwhelming evidence and the defendant had no way to defend himself on the elements of the crime, he had to come up with a defense. The defense he came up with was duress. Now the defendant has changed his mind and he seeks a new trial based on newly discovered evidence and based on ineffective assistance of counsel. The elements of those two bases for new trials are not borne out by the record, and the court should deny both motions and has, and you should affirm that denial. The district court judge presented with essentially the same information that you have before you today, applied the correct legal principle and denied the motion. And therefore, the only question you have today is whether he applied the facts to the law in an illogical, implausible way or in a way that was unsupported by facts or inferences from those facts. I don't think that it is possible to describe Judge Kuhnauer's seven-page order as anything but thoughtful, reflective of the record, and not illogical. With regard to newly discovered evidence, there are three elements. One is that the evidence actually be newly discovered. Secondly, that it could have been discovered with due diligence. As Your Honor pointed out, there were significant instances within the record, both before and just before trial, that showed that everyone knew that there was some odd behavior by this defendant, that there were things going on that could have been addressed. At the jail, the defendant himself told his counselors that he was bipolar. So unlike the Allen case, which the defense cites and tries to distinguish somewhat, here we have a defendant who knew that he could have presented some sort of mental health defense. So we're really to the ineffective assistance of counsel problem. And I think we get most clearly to what Judge Reimer was asking about, and that is how could this have possibly made a difference? And I have plumbed the depths of my brain, and I cannot figure out a way how presenting evidence that the defendant was crazy was going to help a jury find that what he told them about an incident occurring in Canada, which the government was claiming was made up, was actually true. It simply does not make sense and is not a basis for ineffective assistance of counsel. Unless there are further questions by the court. As for ineffective assistance of counsel, what is my standard? The defense bears the burden of proving that the- If it's not new evidence, then what is it that I need to find here? That counsel fell below an objectively reasonable standard. Excusable neglect? Would you say that's the standard? Your Honor, with regard to the question of timeliness of the motion for new trial based on ineffective assistance of counsel, yes. One of the elements that the defense would have to show is that the motion wasn't brought within seven days because of excusable neglect. And there's simply no evidence of that in the record as well. And the last thing I guess I want the court to remember when thinking about the ineffective assistance of counsel claim is that you're essentially saying that two different attorneys were ineffective in this case. Remember that the defendant had Mr. Mazzone as a lawyer for three and a half months, longer than the speedy trial rules require for a trial, and he never raised a mental health issue. And then you had Mr. Illa, who in the nine or ten months that he had the defendant as a client, never raised a mental health issue. I would ask- So in effect, what we're really suggesting is for ineffective assistance of counsel question, first we have to think about the deadline, and that's what I was going to get to with counsel. And you've appropriately suggested excusable neglect on that. And then if we get to the ineffective assistance of counsel, the merits of the ineffective assistance of counsel situation, you're suggesting two lawyers didn't say anything about it, therefore it wasn't ineffective? Two lawyers didn't say anything about it, and there is no reason in the record why either of these lawyers would have brought up a mental health issue. There's nothing to indicate, number one, that these lawyers did not investigate it, did not look into it, did not find some evidence about it, and make a decision that, hey, a duress defense is going to work better. Was there any prejudice to the government- As far as- Having a new trial on ineffective assistance of counsel? Well, the prejudice that was set forth in the briefing was the prejudice of the loss of Mr. Toki as a witness, and that loss would be significant for the government. I understand defense counsel's argument that perhaps the government could present that evidence in a different way in a new trial, but there's no substitute for Your Honor, who has sat in trial courts and listened to evidence come in for live witnesses, and particularly if you read the record in this case, Mr. Toki made a significant difference. This was a young guy who was dumb. He was not very smart. He sort of plotted along and did his part in this drug smuggling operation, and when he described what happened on the stand to this jury, it was incredibly believable because of who he was and how he described it. Losing that testimony will be a significant prejudice to the government if there was a new trial. Let me ask you, is there anything about the strategic choice, if it were one, not to talk about mental health, that would add to the counsel's idea that they ought not talk about his mental health? Any strategy choice they could have been thinking about not to bring that up rather than to bring it up? Well, certainly, Your Honor. With duress, first of all, there is no indication from Dr. Muscatel that a mental defense was possible. So what we're stuck with here is the defense saying, within the context of the defense that was chosen, presenting mental health information would have helped explain my client's testimony. That's the argument made by the defense. That's the argument you've already made. Any other strategic choice? And that would not have worked. There is no strategic choice that would have been viable for them to present mental health information about this defendant. It simply would have made him less credible to the jury. It would have made him, information would have come out that he hallucinates. I thought counsel's argument was that if he had seen a psychiatrist or a competent medical person earlier, he would have been medicated and been more coherent. Well, Your Honor, first of all, there's no evidence of that in the record. That is an argument that was made in the reply brief of the appellant. And there's no evidence that that was true. But you're saying he was incoherent? No, he was not incoherent. And there's no evidence that he was. Do you think he had a mental problem of any kind that should have been examined? I'm certain, based on Dr. Muscatel's report, that he did have mental health problems, of course. What did the probation officer say? The probation office indicated that he did have mental health issues, mental health issues that were taken into account at his sentencing. But I think that there is a difference between having the defendant receive the sentence of 96 months as opposed to one that could have gone as high as 188 months. Way out of the range, correct? That's correct. Thank you, counsel. Thank you, Your Honors. Thank you, Your Honors. Returning to some of the points that have already been made. You were discussing, Your Honor, an abuse of discretion. Why is this an abuse of discretion? Well, I think this is an abuse of discretion, frankly, because although Judge Kuhnhauer is a great judge, I believe it was illogical and implausible of him to have placed upon Mr. Giselle the burden of evaluating his own mental state and alerting his counsel to it ahead of time.    And I don't know that there was any proof that Mr. Giselle was put in. That's what to me is the most illogical thing about Judge Kuhnhauer's ruling. That's the most illogical thing about Judge Kuhnhauer's ruling. He was ruling denying a hearing on the mental issue. Is that your point? Yes, Your Honor. What would you have proven if he had granted you a hearing? I couldn't quite hear you. I'm so sorry. What would you have proven? What would we have proven if he had granted the hearing? I don't know. There wasn't a proffer. So I can't tell you exactly what the evidence would have been. No proffer was ever made. There was not a proffer. What do I do to get this ineffective assistance of counsel even in front of the good judge? I'm sorry. Did you say what do you do? What can I do to the appellate court? Can I find excusable neglect here on when this motion was filed? Yes, Your Honor, because Mr. Giselle put this issue before his then-trial attorney right after trial. He said they're in the record. What's your best case? My best case on excusable neglect? Yes. I can't name one best case, Your Honor. This is fact-driven. This is fact-driven. He asked his attorney. I tried to find a case that would appropriately reflect your facts and the excusable neglect standard of review, and I'll be fair, I couldn't find one which helped you very much. Neither could I, Your Honor, but I couldn't find one that was on point against me either. I believe that this is a new issue, that this makes it difficult for this Court to deal with and difficult to research. I certainly did look for that, Your Honor, and what I came to was that it is going to come down to the facts, and the fact is that Mr. Giselle, a mentally ill defendant, unmedicated, asked his attorney all we know is soon after trial for a new trial and a new attorney, and that's another reason I believe we need an evidentiary hearing is to determine when that was. But in terms of excusable delay, yes, opposing counsel did cite Sabir, which said that three months was too long, but Mr. Giselle sent a letter asking for a new hearing in six weeks. So I'm saying that it's fact-driven and that we should hold Mr. Giselle only to the six weeks that it took him, a mentally ill, unaided defendant, to finally write a letter saying please help me, please give me a new trial. Thank you. If the Court has no further questions, I'll rest on my brief. Thank you. Case 09-30358, U.S. v. Giselle is now submitted.
judges: Hart, Rymer, Smith N. R.